**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY,

Plaintiff,

v. CIVIL ACTION NO. 2:25-cv-00295

JESSICA L. MCCOMAS, et al.,

Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the court is Plaintiff Allstate Vehicle and Property Insurance Company's Motion for Summary Judgment on Insurance Coverage Issues, [ECF No. 51]. Defendant Bridgette Barre responded as the Administratrix of the Estate of Chloe Barre, [ECF No. 53], and Defendant Joseph Lowers responded as the Administrator for the Estate of Joseph Lowers, II, [ECF No. 57]. Plaintiff Allstate filed a combined reply to Defendants' responses, [ECF No. 59]. Also pending is the Barre Estate's Motion to Seal Exhibits C and D. [ECF No. 55]. For the following reasons, Plaintiff's Motion for Summary Judgment is **GRANTED**, and Defendants' Motion to Seal is **GRANTED**.

## I. BACKGROUND

In the early morning hours of February 10, 2025, Edward McComas, III, Joseph Lowers, II, and Chloe Barre were traveling in an all-terrain vehicle ("ATV") in Wood County, West Virginia, when the ATV left the roadway, went airborne, and struck a tree. [ECF No. 51-1, at 2–9]. Chloe and Joseph sustained fatal injuries while Edward walked away with minimal injury. *Id.*

at 9.

At the crash scene, Edward identified Joseph as the operator of the ATV to law enforcement. *Id.* The Crash Report reflects this representation. *Id.*[1] The Estates of Chloe Barre and Joseph Lowers, II, however, deny the accuracy of the Crash Report and instead aver that Edward was the operator of the ATV at the time of the accident. [ECF Nos. 9–10, ¶ 10].

Bridget Barre, as Administratrix of the Estate of Chloe Barre (the "Barre Estate"), filed a complaint in the Circuit Court of Wood County, West Virginia (the "underlying complaint" or "underlying action") alleging claims for negligence against Edward McComas, III, or alternatively, Joseph Lowers, II; for negligent entrustment against Edward; and for negligence against Jessica L. McComas, Edward's mother and owner of the ATV at the time of the crash. [ECF No. 53-1]. Specifically, the Barre Estate claimed that Edward "recklessly, negligently, and unlawfully" operated the ATV while intoxicated. *Id.* at ¶¶ 22–24. But if Edward was not the driver of the ATV at the time of the accident, the Barre Estate alternatively alleged negligence on Joseph Lower, II's part for his intoxicated and negligent operation of the ATV, and negligent entrustment by Edward for permitting Joseph to operate the ATV knowing Joseph was intoxicated. *Id.* at ¶¶ 48–53, 62–68. Finally, as to Jessica McComas, the Barre Estate alleged she "negligently encouraged and/or facilitated" Edward's excessive intoxication and reckless operation of the ATV resulting in Chloe and Joseph's fatal injuries. *Id.* at ¶¶ 69–79.

At the time of the accident, the ATV was insured by Jessica McComas under an Allstate ATV policy, identified as Policy No. 818 538 231 ("the ATV Policy"). [ECF No. 51-2]. Allstate separately issued a House and Home Policy, No. 818 650 740 ("the Home Policy") to Jessica

[1] Edward was a patrolman with the Parkersburg Police Department ("PPD") at the time, but when Edward refused to undergo a polygraph examination relating to his statements made to the police in creating the Crash Report and his elevated BAC level at the time of the accident, the PPD terminated his employment. [ECF No. 53-5, at 3].

McComas for the relevant policy period September 26, 2024 through September 26, 2025. [ECF No. 51-3]

In the underlying action, Allstate has accepted coverage under the ATV Policy and has extended the limits of liability coverage of the ATV Policy to the Barre Estate. [ECF No. 52, at 8]. However, Allstate determined that no liability or medical payments coverage is available under the Home Policy. *Id.*

Allstate subsequently filed the instant declaratory judgment action in this court seeking an order declaring it has neither a duty to defend nor a duty to indemnify the Defendants under the Home Policy in the underlying state court action. [ECF No. 1].

The Home Policy sets forth, in relevant part, the following provisions and exclusions:

**Section II – Family Liability And Guest Medical Coverage**

**Family Liability Protection – Coverage X**

**Losses We Cover Under Coverage X**

> Subject to the terms, conditions and limitations of this policy, **we** will pay damages which an **insured person** becomes legally obligated to pay because of **bodily injury** or **property damage** arising from an **occurrence** to which this policy applies, and is covered by this part of the policy.
>
> **We** may investigate or settle any claim or suit for covered damages against an **insured person**. If an **insured person** is sued for these damages, **we** will provide a defense with counsel of **our** choice, even if the allegations are groundless, false or fraudulent. **We** are not obligated to pay any claim or judgment after **we** have exhausted **our** limit of liability.

* * * *

**Guest Medical Protection – Coverage Y**

**Losses We Cover Under Coverage Y:**

> **We** will pay the reasonable expenses incurred for necessary medical, surgical, X-ray and dental services, ambulance, hospital, licensed nursing and funeral services, and prosthetic devices, eye glasses, hearing aids, and pharmaceuticals. These

expenses must be incurred and the services performed within three year from the date of an **occurrence** causing **bodily injury** to which this policy applies, and is covered by this part of the policy.

Each person who sustains **bodily injury** is entitled to this protection when that person is:

1. on the **insured premises** with the permission of an **insured person**; or
2. off the **insured premises**, if the **bodily injury**:
    a) arises out of a condition on the **insured premises** or immediately adjoining ways;
    b) is caused by the activities of an **insured person** or a **residence employee**;
    c) is caused by an animal owned by or in the care of an **insured person**; or
    d) is sustained by a **residence employee**.

* * * *

The Home Policy also includes the following definitions:

**Definitions Used In This Policy**

Throughout this policy, when the following words appear in bold type, they are defined as follows:

1. **Bodily injury** – means physical harm to the body, including sickness or disease, and resulting death …

* * * *

5. **Insured person(s)** – means **you** and, if a resident of **your** household:
a) any relative; and
b) any person under the age of 21 in your care.

* * * *

7. **Occurrence** – means an accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in **bodily injury** or **property damage**.

* * * *

Finally, the Home Policy also includes the following exclusions:

**Losses We Do Not Cover Under Coverage X [and Y][2]:**

[2] The exclusions discussed are identical in both the Coverage X and Y sections of the Home Policy. For ease of reference, they are discussed together.

> 1. **We** do not cover any **bodily injury** or **property damage** intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any **insured person**. This exclusion applies even if:
>
> > a) such **insured person** lacks the mental capacity to govern his or her conduct;
> > b) such **bodily injury** or **property damage** is of a different kind or degree than intended or reasonably expected; or
> > c) such **bodily injury** or **property damage** is sustained by a different person than intended or reasonably expected.
>
> This exclusion applies regardless of whether such **insured person** is actually charged with, or convicted of, a crime.

* * * *

> 5. **We** do not cover **bodily injury** or **property damage** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any motor vehicle or trailer. **We** will not apply this exclusion to:
>
> > a) a motor vehicle in dead storage or used exclusively on an **insured premises**;
> > b) any motor vehicle designed principally for recreational use off public roads, unless that vehicle is owned by an **insured person** and is being used away from an **insured premises**;
> > c) a motorized wheelchair
> > d) a vehicle designed to service an **insured premises** which is not designed for use on public roads and not subject to motor vehicle registration…

* * * *

> 7. **We** do not cover **bodily injury** or **property damage** arising out of:
>
> > a) the negligent supervision by any **insured person** of any person; or
> > b) any liability statutorily imposed on any **insured person**;
>
> arising from the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any aircraft, hovercraft, motorized land vehicle or trailer which is not covered under **Section II** of this policy.

[ECF No. 51-3]

Only the Barre Estate and Lowers Estate answered the complaint. [ECF Nos. 9–10]. Accordingly, the clerk entered a default judgment against Jessica McComas and Edward

McComas. [ECF No. 58]. Allstate thereafter filed the instant motion for summary judgment, [ECF No. 51], the Barre and Lowers Estates filed responses in opposition, [ECF Nos. 53, 57], and Allstate filed a joint reply, [ECF No. 59].[3] In its response in opposition, the Barre Estate filed a motion to file under seal Exhibits C and D. [ECF No. 55]. The court will now take the motions in turn.

## II. LEGAL STANDARD

### A. Declaratory Judgment

Under the Declaratory Judgment Act, a district court may, in a case or controversy otherwise within its jurisdiction, "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). A declaratory judgment action "is appropriate 'when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and ... when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996) (quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937)). "It is well established that a declaration of parties' rights under an insurance policy is an appropriate use of the declaratory judgment mechanism." *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 494 (4th Cir. 1998).

### B. Summary Judgment

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving

[3] The Estate of Joseph Lowers, II, joined in and incorporated by reference the Estate of Chloe Barre's Response in Opposition to Summary Judgment and Alternative Motion for Stay of Proceedings, [ECF No. 57].

party." *News & Observer Publ. Co. v. Raleigh–Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). The moving party bears the burden of showing that "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986). Rather, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

## III. DISCUSSION

Under West Virginia law,[4] liability insurance policies establish two main duties on the part of the insurer—the duty to defend and the duty to provide coverage (i.e., to indemnify). *ALPS Prop. & Cas. Ins. Co. v. Murphy*, 473 F. Supp. 3d (N.D. W. Va. 2020) (Keeley, J.); *Aetna Cas. & Sur. Co. v. Pitrolo*, 176 W. Va. 190, 342 S.E.2d 156, 160 (1986); *Donnelly v. Transp. Ins. Co.*, 589 F.2d 761, 765 (4th Cir. 1978). An insurer's duty to defend, as a general rule, is triggered when "the allegations in the plaintiff's complaint are reasonably susceptible of an interpretation that the claim may be covered by the terms of the insurance policy." *Pitrolo*, 342 S.E.2d at 160; *see also* Syl. Pt. 2, *Farmers & Mechanics Mut. Ins. Co. of W. Va. v. Cook*, 210 W. Va. 394, 557 S.E.2d 801, 802 (2001). If *any* of the claims against the insured might trigger coverage, the insurer must defend against *all* the claims asserted. *See Horace Mann Ins. Co. v. Leeber*, 180 W. Va. 375, 376 S.E.2d 581, 584 (W. Va. 1988) (citing *Donnelly*, 589 F.2d at 765). Nevertheless, the insurer need not provide a defense if the claims against the insured are "entirely foreign to the risk insured against." *Id.*

---

[4] In this declaratory judgment action based on diversity of citizenship, West Virginia substantive law applies as it was the state in which the subject policy was issued. *See Beckley Mechanical, Inc. v. Erie Ins. & Cas. Co.*, 374 Fed. App'x. 381, 383, n.1 (4th Cir. 2010) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938)).

The insurer's obligation to defend, however, is broader than its obligation to indemnify. *Pitrolo*, 342 S.E.2d at 160. The duty to indemnify is only triggered by "claims that *actually* fall within the terms of the policy." *State ex rel. Nationwide Mut. Ins. Co. v. Wilson*, 236 W. Va. 228, 778 S.E.2d 677, 682 (2015) (emphasis in original) (quoting 3 Jeffrey E. Thomas, New Appleman on Insurance Law Library Edition § 18-1 (LexisNexis)). As such, the duty to indemnify depends on resolution of the facts alleged in the complaint. *See Penn-America Ins. Co. v. Coffey*, 368 F.3d 409 (4th Cir. 2004). But in considering the duty to defend, the court need not resolve factual disputes if the allegations, taken as true, fall outside the policy coverage. *Coffey*, 368 F.3d at 413. Consequently, in the absence of any assertions in the state court proceeding that could result in damages covered under the Policy, there cannot be a duty to defend, and thus no duty to indemnify. *Minnesota Lawyers Mut. Ins. Co. v. Antonelli, Terry, Stout & Kraus, LLP*, 335 Fed. App'x 698, 704 (4th Cir. 2009).

Allstate argues that summary judgment is proper because the Home Policy provides no family liability or guest medical protection coverage for the fatal injuries and deaths of Chloe Barre and Joseph Lowers, II. Specifically, Allstate contends that the Home Policy expressly excludes coverage for damages "arising out of the operation and use of a motor vehicle" (the "motor vehicle exclusion"). [ECF No. 52, at 8–10]. And, therefore, it has no duty to defend or indemnify under the Home Policy in the underlying wrongful death action.

In response, the Barre Estate first urges the court to abstain from exercising discretionary jurisdiction over this case based on potential entanglement with the underlying state court action. [ECF No. 54, at 4–5].[5] Next, the Barre Estate urges the court to conclude that the "motor vehicle

[5] Because the Estate of Joseph Lowers, II, joined in and incorporated by reference the Estate of Chloe Barre's Response in Opposition to Summary Judgment and Alternative Motion for Stay of Proceedings, [ECF No. 57], for ease of reference this memorandum order refers to the arguments posed by the Barre Estate's response as such.

exclusion" at issue is ambiguous and must be construed in favor of coverage in the underlying action, or alternatively, the "encouragement" claim against Jessica does not fall within the exclusion. *Id.* at 5. The court addresses these in turn below.

**A. Discretionary Exercise of Jurisdiction**

The Fourth Circuit has established four factors for district courts to consider in deciding whether to proceed with a federal declaratory action when a parallel state action is pending:

> (1) whether the state has a strong interest in having the issues decided in its courts; (2) whether the state courts could resolve the issues more efficiently than the federal courts; (3) whether the presence of "overlapping issues of fact or law" might create unnecessary "entanglement" between the state and federal courts; and (4) whether the federal action is mere "procedural fencing," in the sense that the action is merely the product of forum-shopping.

*Medical Mutual Ins. Co. of North Carolina v. Littaua*, 35 F.4th 205, 208-09 (4th Cir. 2022) (quoting *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 297 (4th Cir 2005) & *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 377 (4th Cir. 1994) (abrogated in part on other grounds by *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995))). Often referred to as the *Nautilus* factors, "[a] district court has 'wide discretion' in applying these factors, but '[i]n the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration.'" *Allstate Prop. & Cas. Ins. Co. v. Cogar*, 945 F. Supp. 2d 681, 687 (N.D. W. Va. 2013) (Keeley, J.) (quoting *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 257 (4th Cir. 1996)).

Here, all of the *Nautilus* factors favor the court's exercise of its jurisdiction. First, West Virginia has a weak interest in deciding this case as "the contractual coverage issue will not be decided by the state tort case, and [Allstate] is not a party to the state case." *Penn-America Ins. Co. v. Coffey*, 368 F.3d 409, 414 (4th Cir. 2004). Moreover, there are no state law questions that are "difficult, complex, or unsettled." *Littaua*, 35 F.4th at 209.

As to the final three factors, the critical point is that coverage issues are not part of the state actions. Consequently, a decision here would not unnecessarily entangle the court in the pending state proceedings, given their distinct subject matters—a state action for negligence and a federal action pertaining only to insurance coverage. *Liberty Mut. Fire Ins. Co. v. Sutton*, No. 211-1277, 2022 WL 11112589 at *6 (4th Cir. Oct. 19, 2022). It would also be more efficient to decide the coverage question than to defer that decision until the conclusion of the state litigation. *Coffey*, 368 F.3d at 413–14. Nor is there any indication that Allstate was engaged in "procedural fencing" or forum-shopping. *Id.* at 414. Therefore, the court's exercise of jurisdiction over this matter is proper.

**B. Motor Vehicle Exclusion**

Pursuant to West Virginia law, the specific wording of an insurance policy determines whether it provides coverage for a particular claim. *See Beckley Mechanical, Inc. v. Erie Ins. & Cas. Co.*, 374 Fed. App'x. 381, 383 (4th Cir. Apr. 13, 2010). Indeed, "[l]anguage in an insurance policy should be given its plain, ordinary meaning." Syl. Pt. 8, *Cherrington v. Erie Ins. Prop. & Cas. Co.*, 231 W. Va. 470, 745 S.E.2d 508, 511 (2013) (internal quotations and citations omitted). Courts should not endeavor to interpret policy provisions unless they are unclear or ambiguous. *Id.* at 524. Instead, courts must give terms and provisions their meaning in the "plain, ordinary and popular sense, not in a strained or philosophical sense." *Polan v. Travelers Ins. Co.*, 156 W. Va. 250, 192 S.E.2d 481, 484 (1972); *see also* Syl. Pt. 9, *Cherrington*, 745 S.E.2d at 511.

With that context in mind, under the Home Policy's Family Liability section, Allstate agreed to "pay damages which an insured person becomes legally obligated to pay because of bodily injury or property damage arising from an occurrence to which this policy applies…" [ECF No. 51-3, at 36]. And under the Guest Medical Protection section, "[e]ach person who sustains

bodily injury is entitled to this protection when that person is…off the insured premises, if the bodily injury is caused by the activities of an insured person…" *Id.* at 38. The Home Policy defines "bodily injury" as "physical harm to the body…and resulting death." [ECF No. 51-3, at 17]. And occurrence is defined as "an accident." *Id.* Allstate concedes that the claims arising from the ATV incident constitute a claim for "bodily injury" arising from an "occurrence" off the insured premises. Similarly, Jessica is an insured person under the Home Policy and Allstate further concedes that Edward, if a resident of Jessica's household on the date of the accident, is as well. Therefore, coverage is triggered unless an exclusion applies.

The exclusion at issue in this matter is the "motor vehicle exclusion," found in both the Family Liability Protection and Guest Medical Protection sections, which exempts Allstate from covering "bodily injury or property damage arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any motor vehicle." [ECF No. 51-3, at 23–24, 38–39]. There is no dispute that the ATV constitutes as a motor vehicle. And because Chloe and Joseph suffered fatal injuries arising out of the use of the ATV this exclusion applies—no matter the legal theory or driver of the ATV.[6]

The Barre Estate, however, asserts that "use" in this context is ambiguous and therefore lacks the "necessary specificity to clearly convey what activities involving a motor vehicle fall

[6] The court is aware of the factual dispute between the parties regarding the identity of the ATV operator at the time of the incident. To the Barre Estate, this dispute is materially relevant with regard to determining coverage under the policy thereby rendering summary judgment improper at this stage. It is not necessary to make the factual determination of the identity of the ATV operator in making the ruling on the present motion, however. Application of the motor vehicle exclusion and its exceptions do not depend on the operator of the ATV—the owner of the ATV and relevant insurance policy remains the same. To illustrate this, if Joseph was the driver of the ATV at the time of the accident, then coverage under the Home Policy could not trigger as he is not an insured person. And if Edward was the driver, while the Home Policy would trigger, the motor vehicle exclusion exempts Allstate from providing coverage. Therefore, this dispute does not ultimately affect the outcome of this case. *See Raleigh–Durham Airport Auth.*, 597 F.3d at 576 ("Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party."). Thus, there is no dispute of material fact that precludes the court from considering the merits of the motion and declaring judgment in this matter.

within its scope." [ECF No. 54, at 11]. I disagree. An insurance contract may be ambiguous if "reasonable people can differ about the meaning." Syl. Pt. 1, *D'Annunzio v. Sec.-Connecticut Life Ins. Co.*, 186 W.Va. 39, 410 S.E.2d 275, 276 (1991). And any ambiguities should be construed in favor of the insured. *Id.* However, "[a]n insurance policy should never be interpreted so as to create an absurd result, [] instead [it] should receive a reasonable interpretation, consistent with the intent of the parties." *Id.* at Syl. Pt. 2.

Here, the word "use" is not ambiguous. While certain, perhaps strange circumstances, may force a court to ask what "use" could mean, this is not one of them. To use a motor vehicle clearly, at least, includes driving one. That is fulfilling its main purpose. But even assuming that the word "use" is ambiguous, and even construing its meaning in favor of the insured, the Barre Estate's argument still fails. Every reasonable person would understand that driving an ATV would be "using" the ATV, as written in the Home Policy. To conclude otherwise is absurd. *See Auto Club Prop. Cas. Ins. Co. v. Moser*, 246 W. Va. 493, 874 S.E.2d 295, 302 (2022) ("'An insurance contract should be given a construction which a reasonable person standing in the shoes of the insured would expect the language to mean.'" (quoting *Soliva v. Shand, Morahan & Co.*, 176 W. Va. 430, 345 S.E.2d 33, 33–35 (1986)).

Therefore, the only avenue through which coverage could still apply despite this clear bar is if one of the exceptions to the motor vehicle exclusion applies. In its response, however, the Barre Estate does not appear to suggest that any of these exceptions apply here.

Nonetheless, the court will walk through these exceptions briefly and explain why none apply. Recall that despite exclusion under the motor vehicle exception Allstate will not deny coverage if: (1) the vehicle was in dead storage or used exclusively on an insured premises; (2) the vehicle is designed primarily for recreational use off public roads, unless the vehicle is owned by

an insured person and is being used away from an insured premises; or (3) the vehicle is used to service an insured premises which is not designed for use on public roads and not subject to motor vehicle registration.[7] [ECF No. 51-3, at 36–37]. The ATV at issue here was not in dead storage, not being used for servicing the insured premises, [ECF No. 51-4], and not being used exclusively on insured premises. Rather, the ATV was driven on a public road at the time of the accident far from the insured premises. Therefore, no exceptions to the motor vehicle exclusion apply.

Exclusion 7 of the Home Policy similarly exempts Allstate from coverage with respect to any negligent entrustment claims against Jessica McComas or Edward McComas. Exclusion 7 provides that coverage does not apply for bodily injury arising from the negligent supervision by any insured person arising from the ownership, maintenance, use, occupancy, loaning, or entrusting of any motorized land vehicle, which is not covered under Section II of the policy. [ECF No. 51-3, at 37, 39]. Which, in other words, means that there is no coverage for the negligent entrustment of the ATV unless one of the exceptions discussed above applies, which as explained, they do not. Therefore, this exclusion bars coverage under the Home Policy for any potential negligent entrustment claims in this action.

The Barre Estate attempts to sidestep these clear exclusions by centering and reframing Jessica McComas's conduct as one of "encouragement" rather than "negligent entrustment." Which, to the Barre Estate, does not fall within any of the exclusions:

> Although "entrusting" is undefined within the Home Policy, this term's ordinary meaning involves placing something in another's care with confidence in that person's ability to handle it responsibly. By contrast, "encouraging" describes conduct aimed at prompting or influencing another person to act. Allstate's Home Policy does not identify behavior consistent with the "encouraging" of a vehicle's negligent operation as conduct included in the motor vehicle exclusion list. Nor is the term "encouraging" utilized or defined anywhere else within the Home Policy…Treating [encouragement and entrustment] as interchangeable or one and

[7] The other exceptions apply to wheelchairs, golf carts, trailers, and lawn or garden vehicles. None of which apply here.

> the same under the Home Policy would improperly blur their plain meanings and create ambiguity in the exclusionary language.

[ECF No. 54, at 12].

Although clever wordplay, the Barre Estate cannot now rewrite the Home Policy. Chloe Barre and Joseph Lowers, II's injuries, regardless of legal theory, arose out of the use of a motor vehicle. Even if Jessica encouraged Edward's drinking and subsequent use of the ATV, it was the *use* of a motor vehicle that caused the deaths of Barre and Lowers—which is barred from coverage under the Home Policy including both the motor vehicle exclusion and Exclusion 7. Reframing the claim cannot avoid this result and this court need not go any further.

However, *even if* this court were to accept the argument that the "encouragement" of operating a motor vehicle while intoxicated does not fall within the two exclusions, coverage is still unavailable under the Home Policy. As alleged in the underlying action, Jessica "negligently encouraged and/or facilitated" Edward's intoxicated use of her ATV. [ECF No. 53-1, ¶¶ 74–75]. This claim, as alleged, cannot form the basis of an accident or "occurrence," in order for coverage to apply under the Home Policy. *See* [ECF No. 51-3, at 17] (defining occurrence as "an accident…resulting in bodily injury or property damage"). Although the Home Policy does not define the term, in the context of insurance policies, "accident" has been defined as "a chance event or event arising from unknown causes." *W. Va. Fire & Cas. Co. v. Stanley*, 216 W. Va. 40, 602 S.E.2d 483, 492 (2004).

Facing a similar insurance coverage issue, the Supreme Court of Appeals of West Virginia in *Am. Modern Home Ins. Co. v. Corra*, clarified that "an occurrence, in addition to excluding intentional conduct, also excludes conduct that is foreseen and expected." 222 W. Va. 797, 671 S.E.2d 802, 807 (2008) (finding no occurrence within the terms of an insurance policy where the injury was allegedly caused by the insured homeowner's conduct in knowingly permitting an

underage adult to consume alcohol on the homeowner's property). In other words, conduct engaged in knowingly is not an "accident" and thus not an "occurrence" under [the relevant] homeowner's policy. *Id.* at 806–07.

As the Barre Estate itself asserts, "'encouraging' describes conduct *aimed at* prompting or influencing another person to act," [ECF No. 54, at 12] (emphasis added). Even further, in the underlying action, the Barre Estate considers the intoxicated use of the ATV and resulting fatal crash, a "*reasonably foreseeable*" outcome of Jessica's "encouragement" of such actions at her residence. [ECF No. 53-1, ¶¶ 78–79]. Applying West Virginia's definition of accident to the allegations in the underlying complaint, the court concludes that because the ATV incident was a reasonably foreseeable result of Jessica's knowing and/or intentional conduct, the Barre Estate's "encouragement" claim cannot be classified as an occurrence within the terms of the Home Policy.[8]

The court therefore concludes that, regardless of legal theory, the deaths of Chloe and Joesph arose out of the use of a motor vehicle, and coverage is not available under the Home Policy for the subject accident.

In light of the court's conclusion that, as a matter of law, coverage is excluded under the Home Policy for this case, the court must conclude that Allstate has no duty to defend or indemnify under the Home Policy with respect to the underlying action. *See Pitrolo*, 342 S.E.2d at 160 (providing that an insurer's duty to defend is triggered when "the allegations in the plaintiff's complaint are reasonably susceptible of an interpretation that the claim may be covered by the terms of the insurance policy"); *see also Minnesota Lawyers Mut. Ins. Co*, 335 Fed. App'x at 704

---

[8] Exclusion 1 of the Home Policy, [ECF No. 51-3, at 36], similarly excludes coverage for "any bodily injury or property damage intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any insured person." With the court's conclusion that a claim of "encouragement" denotes some form of deliberate or intentional conduct, coverage is alternatively excluded pursuant to Exclusion 1.

(holding that in the absence of any assertions in the state court proceeding that could result in damages covered under the Policy, there cannot be a duty to defend, and thus no duty to indemnify).

**C. Motion to Seal**

Also pending is the Barre Estate's Motion to Seal, [ECF No. 55], Exhibits C and D to its response in opposition to Allstate's motion for summary judgment. [ECF No. 51]. Because Exhibits C and D contain highly graphic images and private medical records, including a photograph of Joseph Lowers, II's injuries and Edward McComas, III's medical records, the compelling interest in maintaining the privacy of individuals' medical records outweighs the right of public access hereto. *See Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 575 (4th Cir. 2004) (recognizing the presumption that the public has a right "to inspect and copy *all* judicial records and documents," but concluding that the presumption "can be rebutted if countervailing interests heavily outweigh the public interests in access"). The Barre Estate has met its burden of overcoming the presumption of public access, *id.*, and the Motion [ECF No. 55] is accordingly **GRANTED**.

**IV. Conclusion**

Having examined the relevant policy language in conjunction with the allegations in the underlying complaint, and finding no coverage, the court **GRANTS** Plaintiff's Motion for Summary Judgment on Coverage Issues [ECF No. 51] and **DECLARES** that Allstate has no duty to defend or indemnify these Defendants under the Home Policy in question on the underlying claims asserted in the state court action. The Barre Estate's Motion to Seal, [ECF No. 55], is **GRANTED**.

The court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented party.

ENTER: September 16, 2026

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE